# IN THE UNITED STATES DISTRICT COURT FOR THE

# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | No.  CR-20-234-SLP |
| | ) | |
| JUAN LU, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## <u>UNITED STATES' SENTENCING MEMORANDUM</u>

ROBERT J. TROESTER
Acting United States Attorney

WILLIAM E. FARRIOR
Okla. Bar No. 22137
MATT DILLON
Okla. Bar No.: 19321
Assistant United States Attorneys
210 Park Avenue, Suite 400
Oklahoma City, OK 73102
(405) 553-8700 (Office)
William.farrior@usdoj.gov
Matthew.dillon@usdoj.gov

# **TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES……………………………………………………...ii

UNITED STATES' SENTENCING MEMORANDUM………………………… 1

PROCEDURAL HISTORY…………………………………………………… 1

BACKGROUND…………………………………………………………………2

ARGUMENT……………………………………………………………...3

  I.   Wire fraud and conspiracy charges against Lu constitute relevant conduct
      if proven by a preponderance of the evidence…………………………………3

  II.  Juan Lu participated in a scheme to misappropriate $2.1 million from the
      Department of Energy……………………………………………………… 5

     A. Lu and Liu made misrepresentations to obtain the Phase I STTR grant
        from DOE……………………………………………………………… 6

     B. Lu and Liu made misrepresentations during the course of the grants…………… 10

     C. Lu and Liu made misrepresentations during the grant close-out process………...11

  III.  Loss amount for sentencing purposes is $2.1 million……………………………12

     A. The Court should not offset the loss amount based on the value of any
        work performed with grant money…………………………………………… 13

     B. Alternatively, there is an insufficient basis to offset the loss amount…………… 15

  IV.  Lu owes restitution in the amount of $2.1 million………………………………...17

CONCLUSION……………………………………………………………………...18

i

# **TABLE OF AUTHORITIES**

**Page(s)**

*Near v. United States*, 708 F. App'x 590 (11th Cir. 2017) ................................................ 15

*United States ex rel. Longhi v. United States*, 575 F.3d 458
   (5th Cir. 2009) ........................................................................................................ 13, 14

*United States v. Aldissi*, 758 F. App'x 694 (11th Cir. 2018) ........................... 2, 12, 13, 18

*United States v. Alphas*, 785 F.3d 775 (1st Cir. 2015) ................................................ 16

*United States v. Baldridge*, 559 F.3d 1126 (10th Cir. 2009) ........................................ 6, 12

*United States v. Bin Wen*, No. 17-CR-06173, 2018 WL 6715828
   (W.D.N.Y. Dec. 21, 2018) ................................................................................... 15, 16, 17

*United States v. Caldwell*, 585 F.3d 1347 (10th Cir. 2009) ................................................ 4

*United States v. Cochran*, 109 F.3d 660 (10th Cir. 1997) ................................................ 17

*United States v. Fishman*, 645 F.3d 1175 (10th Cir. 2011) ................................................ 6

*United States v. Fortier*, 180 F.3d 1217 (10th Cir. 1999) ................................................ 5

*United States v. Hebron*, 684 F.3d 554 (5th Cir. 2012) ................................................ 16

*United States v. Howard*, 887 F.3d 1072 (10th Cir. 2018) ................................................ 17

*United States v. Jha*, 613 F. App'x 212 (4th Cir. 2015) ................................................ 13

*United States v. Johnson*, 342 F.3d 731 (7th Cir. 2003) ................................................ 5

*United States v. Kieffer*, 681 F.3d 1143 (10th Cir. 2012) ................................................ 3

*United States v. Lewis*, 113 F. App'x 336 (10th Cir. 2004) ................................................ 4

*United States v. McConnell*, 273 F. App'x 351 (5th Cir. 2008) ........................................ 4

*United States v. Qingyou Han*, 479 F. Supp. 3d 783 (N.D. Ind. 2020) ................. 13, 14, 15

*United States v. Shannon*, 110 F.3d 382 (7th Cir. 1997) ................................................ 5

*United States v. Wieck*, No. 19-6075, 2021 WL 4949177
   (10th Cir. Oct. 25, 2021) ................................................................................................ 17

**Federal Statutes**

15 U.S.C. § 638 ...................................................................................................... 2

15 U.S.C. § 638(e)(6) ............................................................................................. 8

15 U.S.C. § 638(e)(6)(A) ........................................................................................ 2

15 U.S.C. § 638(e)(6)(B) ........................................................................................ 2

18 U.S.C. § 1001 .................................................................................................... 4

18 U.S.C. § 1001(a)(2) ........................................................................................... 1

18 U.S.C. § 1001(a)(3) ........................................................................................... 1

18 U.S.C. § 1028A .................................................................................................. 1

18 U.S.C. 1343 ................................................................................................... 1, 6

18 U.S.C. § 1349 ................................................................................................. 1, 6

18 U.S.C. § 3663A ................................................................................................ 17

**Federal Rules**

U.S.S.G. § 1B1.3 .................................................................................................... 3

U.S.S.G. § 1B1.3(a) ................................................................................................ 3

U.S.S.G. § 1B1.3(a)(2) ........................................................................................... 4

U.S.S.G. § 2B1.1 ................................................................................. 12, 13, 15, 17

## UNITED STATES' SENTENCING MEMORANDUM

The Court should sentence Juan Lu to a within-guidelines term of imprisonment and order restitution in the amount of $2.1 million. In this case, a husband and wife obtained grants from the Department of Energy totaling $2.1 million. They made several misstatements to obtain the grant money and falsely reported what they did with the grant money. Though Lu only admits to her participation in the attempted cover-up of the underlying grant fraud scheme, the Court should find that Lu conspired with Shaorong Liu to commit wire fraud. The Court should sentence Lu based on her entire course of conduct and restore the money that Lu and Liu took to the Department of Energy.

## PROCEDURAL HISTORY

A federal grand jury returned an indictment charging Lu and Shaorong Liu with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349, six substantive counts of wire fraud in violation of 18 U.S.C. § 1343, one count of making false statements in violation of 18 U.S.C. § 1001(a)(2), four counts of using false documents in violation of 18 U.S.C. § 1001(a)(3), and one count of aggravated identity theft in violation of 18 U.S.C. § 1028A. ECF No. 1. A federal grand jury subsequently returned a superseding indictment charging Shaorong Liu with an additional count of wire fraud and making a false statement. ECF No. 66.

Juan Lu entered into a plea agreement with the United States (ECF No. 122) and pleaded guilty to Count 10 of the Superseding Indictment, alleging use of false documents in violation of 18 U.S.C. § 1001(a)(3). ECF No. 121.

1

## BACKGROUND

Juan Lu is married to Shaorong Liu. ECF No. 136, at ¶ 17. MicroChem Solutions is an entity that Lu and Liu controlled. *Id*. at ¶ 18. In November 2010, Lu and Liu submitted a research grant proposal, ostensibly on behalf of MicroChem Solutions, requesting $100,000 from the Department of Energy. *Id*. at ¶ 28. Lu and Liu requested the grant from the DOE's Small Business Technology Transfer ("STTR") Program. *Id*. Congress created this program to assist qualified small businesses in partnering with research institutions to develop innovative technology and bring new products to market. *See* 15 U.S.C. § 638; *United States v. Aldissi*, 758 F. App'x 694, 699 (11th Cir. 2018). Lu and Liu subsequently applied for and received two additional grants as part of the STTR program totaling $2 million. ECF No. 136, at ¶ 29. DOE and SBA refer to the first $100,000 grant as a Phase I grant and the two subsequent grants as Phase II and IIB. Phase I of the STTR program is defined in the statute as being used to determine the "scientific, technical, and commercial merit and feasibility of ideas submitted pursuant to STTR program solicitations." 15 U.S.C. § 638(e)(6)(A). Phase II of the STTR program is defined as being used to "further develop proposals that meet particular program needs." 15 U.S.C. § 638(e)(6)(B).

The grants required applicants to make numerous certifications to establish eligibility to receive the grants. *Id*. at ¶¶ 23-24.[1] The grants also had several requirements for ongoing reporting and accounting for funds received. *Id*. at ¶ 25. Lu and Liu's

---

[1] The Funding Opportunity Announcement describes the STTR program and many of the grant requirements. Ex. 1.

submissions to the DOE contained many material, false statements. Lu and Liu were not eligible to receive any grant money from the DOE STTR program, they failed to properly account for the grant money, and they misspent most, if not all the grant money.

## ARGUMENT

The Court should hold Lu accountable for all relevant conduct and sentence Lu to a within-guidelines term of imprisonment. The Court should additionally order restitution in the amount of $2.1 million representing the entirety of grant funds which Lu and Liu received and to which Lu and Liu were not entitled.

**I.     Wire fraud and conspiracy charges against Lu constitute relevant conduct if proven by a preponderance of the evidence.**

Juan Lu and Shaorong Liu conducted a years' long scheme to take $2.1 million in federal grant money from the DOE's STTR program. For purposes of sentencing, the United States Sentencing Guidelines direct the Court to determine the scope of relevant conduct. U.S.S.G. § 1B1.3; *United States v. Kieffer*, 681 F.3d 1143, 1165 (10th Cir. 2012) ("In determining a defendant's offense level for an instant offense, the district court must account for both the actual conviction and all other relevant conduct[.]"). The Sentencing Guidelines direct the Court to consider multiple potential categories of relevant conduct, including the defendant's conduct, jointly undertaken criminal activity, and groupable offenses that are part of the same course of conduct or common scheme or plan as the offense of conviction. U.S.S.G. § 1B1.3(a).

The wire fraud and wire fraud conspiracy charges alleged in the superseding indictment are relevant conduct for purposes of sentencing. "The Sentencing Guidelines provide that the [C]ourt should take into account all activities that form part of the same course of conduct or common scheme or plan as the offense of conviction . . . even if the defendant was never charged with that additional conduct, and the jury never found him guilty of it." *United States v. Caldwell*, 585 F.3d 1347, 1350 (10th Cir. 2009) (internal citations and quotation marks omitted). Applying these principles, relevant conduct for an 18 U.S.C. § 1001 charge includes underlying offenses that the false statement (or false document) was designed to hide. *United States v. Lewis*, 113 F. App'x 336, 339 (10th Cir. 2004) ("[T]he district court did not err in finding the conduct [participation in a check cashing scheme] was part of a 'common scheme or plan' under U.S.S.G. § 1B1.3(a)(2) since her false statements were designed to evade detection of her thefts."); *see also United States v. McConnell*, 273 F. App'x 351, 355 (5th Cir. 2008) (in a false-statement case, uncharged embezzlement was relevant conduct because the false statement concealed his whereabouts at a casino where he gambled embezzlement proceeds).[2] Here, as alleged in the superseding indictment, Lu and Liu committed wire fraud and participated in a wire fraud conspiracy when they obtained and misspent DOE grant money. Lu's submission of

---

[2] The Probation Office accurately asserts that the entire grant fraud scheme counts as relevant conduct because it is "groupable" with the offense of conviction pursuant to U.S.S.G. § 3D1.2(d) and counts as "jointly undertaken criminal activity" regardless of Lu's attempts to blame Liu for the false statements. ECF No. 136, at 27 (citing U.S.S.G. § 1B1.3(a)(2)).

a false document to DOE auditors constitutes a false statement "designed to evade detection" of the underlying wire fraud; therefore, the Court should consider the entire conspiracy as relevant conduct for sentencing purposes.

To consider the entire conspiracy as relevant conduct under the guidelines, the Court must find that Lu committed wire fraud and wire fraud conspiracy by a preponderance of the evidence. *See United States v. Fortier*, 180 F.3d 1217, 1226 (10th Cir. 1999); *United States v. Johnson*, 342 F.3d 731, 734 (7th Cir. 2003) ("Proving relevant conduct by a preponderance of the evidence requires showing that the conduct was "'more likely than not," *i.e.*, probable or likely rather than just possible.'" (quoting *United States v. Shannon*, 110 F.3d 382, 401 n.10 (7th Cir. 1997) (en banc))). The Court should find that it was more likely than not that Lu participated in the wire fraud and wire fraud conspiracy and should consider these offenses as relevant conduct for purposes of sentencing.

## II.    Juan Lu participated in a scheme to misappropriate $2.1 million from the Department of Energy.

The United States expects to present evidence at sentencing that Lu and Liu committed wire fraud and conspiracy to commit wire fraud. To prove that Lu committed wire fraud as alleged, the United States must prove: (1) that the defendant devised or intended to devise a scheme to defraud; (2) the defendant acted with specific intent to defraud; (3) that the defendant used or caused another person to use interstate wire communications facilities for the purpose of carrying out the scheme; and (4) the scheme employed false or fraudulent pretenses, representation, or promises that were material. 18

5

U.S.C. § 1343; Tenth Cir. Pattern Jury Instr. 2.57. To prove the conspiracy charge, the United States must prove: "(1) two or more persons agreed to violate the law, (2) the defendant knew the essential objectives of the conspiracy, (3) the defendant knowingly and voluntarily participated in the conspiracy, and (4) the alleged coconspirators were interdependent." *United States v. Fishman*, 645 F.3d 1175, 1186 (10th Cir. 2011) (quoting *United States v. Baldridge*, 559 F.3d 1126, 1136 (10th Cir. 2009)); *see* 18 U.S.C. § 1349.

Here, Lu and Liu conspired to obtain and misspend grant funds from the DOE, and they sent several interstate wire communications in furtherance of the scheme.

## A.  Lu and Liu made misrepresentations to obtain the Phase I STTR grant from DOE

On or about November 8, 2010, Lu and Liu submitted an initial application requesting $100,000 in funding to conduct research on an electroosmotic pump for high pressure liquid chromatography. Ex. 2. The application listed Liu as the principal investigator. *Id*. at 1. Lu electronically signed the application. *Id*. at 2. The application contained many assertions about MicroChem Solutions and the proposed work, including:

- The application asked, "Has the applicant and/or Program Director/Principal Investigator submitted proposals for essentially equivalent work under other Federal program solicitations or received other Federal awards for essentially equivalent work?" Lu and Liu answered, "No."

- The application asked, "In the joint research and development proposed in this project, does the small business [MicroChem Solutions] perform at least 40% of the work and the research institution named in the application perform at least 30% of the work?" Lu and Liu answered, "Yes."

- The application asked applicants to "[s]pecify the facilities to be used . . . ." Lu and Liu answered, "MicroChem Solutions is a small company with three employees.

6

> We have a lab/office space of about 700 square feet floor space. In the lab, we have multiple electricity outlets, cold/hot tap water, DI water, HEPA laminar hood, an optical table, a refrigerator, two chemical cabinets, and some clean area. . . ."

Other evidence demonstrated that these assertions were false.

Regarding the assertion that Liu had not received Federal awards for essentially equivalent work, Liu and Lu failed to disclose that Lu received a grant from the National Institute of Health for a project to develop an electroosmotic pump for microchip HPLC. ECF No. 136, at ¶ 27. Comparing the applications for the DOE and NIH grants and the progress reports for each grant reveals substantial overlap. *Compare* Ex. 2 *with* Ex. 3; *compare* Ex. 4 *with* Ex. 5. Demonstrating that Lu and Liu intentionally withheld information about Liu's previous work, Liu certified at the end of the grant that "All[] essentially equivalent work, or a portion of the work performed under this project . . . [h]as not been submitted for funding by another Federal agency." Ex. 6, at 8. This misrepresentation was material because the DOE does not fund work that has already been funded by another agency.

Regarding the assertion about MicroChem Solutions's level of involvement, MicroChem Solutions did not perform at least 40% of the work. Law enforcement interviewed Lu on May 29, 2020, and Lu admitted that "most of the experiment was done in the OU." Ex. 7, at 30. Lu estimated that when she was working on the DOE project she was always at OU. *Id*. at 31. Liu also told investigators regarding how much work was completed at MicroChem Solutions, "We tried to actually to do some of the DOE . . . test of the micro, yeah . . . . But we actually did not do that much." Ex. 8, at 107.

7

Misrepresentations about MicroChem Solutions's work were material because, by statute, the DOE may only award STTR grants to small business who will do at least 40% of the work. 15 U.S.C. § 638(e)(6), (7). This misrepresentation was also material because Lu and Liu budgeted for and charged to the grants a substantial amount of general and administrative expenses, among other things, to operate MicroChem Solutions. Again, demonstrating these misstatements were intentional, Liu again repeatedly certified that MicroChem Solutions performed at least 40% of the work at the close of the grants. *E.g.*, Ex. 6, at 7.

Regarding the assertions about MicroChem Solutions's employees and lab space, these too were inaccurate. MicroChem Solutions only had two *de facto* employees, Lu and Liu. Ex. 7, at 37. MicroChem Solutions's bank account reflected no payments to employees, equipment purchases, or operating expenses prior to the grant period. Ex. 18 at ¶ 47. Furthermore, MicroChem Solutions was located at Lu and Liu's residence in Norman, Oklahoma. As a residence, the property lacked any "clean area," and the property was not an appropriate place to work with chemicals, as Lu admitted to investigators. Ex. 7, at 31 ("[H]ere [in Lu and Liu's house,] we're not supposed to uh store chemicals and those kind of stuff."). As the grants may only be awarded to *bona fide* small businesses, Lu and Liu's exaggerations of the capabilities of their business entity were material to the DOE decision to award the grant. As discussed below, Lu and Liu repeatedly exaggerated the capital, number of employees and capabilities of MicroChem Solutions in later applications.

Lu and Liu submitted other documents to obtain the initial grant from DOE, which contained material misrepresentations. For example, Lu signed a "Representation Concerning Financial Management System" on May 26, 2011. In this representation, Lu represented that MicroChem Solutions's "financial management system me[t] all the standards for financial management systems set forth in 10 CFR 600.311." Ex. 9. Specifically, the certification that Lu signed explained that MicroChem Solutions was required to and did have effective control of all funds, that expenses would meet federal requirements for reasonableness, allowability, and allocability, and that MicroChem Solutions would comply with the terms and conditions of the award. Ex. 9. The terms and conditions of the award in turn required that requests for reimbursements "must be limited to the amount of disbursements made for the federal share of direct project costs and the proportionate share of allowable indirect costs incurred during [each] billing period." Ex. 10, at 1. Lu and Liu went on to ignore the financial management requirements and reimbursement rules as discussed below.

Based on these misrepresentations, the DOE awarded Lu and Liu the initial $100,000 grant. This grant was a so-called Phase I grant. Successful completion of the Phase I grant is required to apply for subsequent grants. Ex. 17, at 2 (stating only currently active Phase I grantees may apply for Phase II funding). Because Lu and Liu lied to get the Phase I grant, they were not entitled to the Phase I grant or the subsequent Phase II and IIB grants that they received.

**B.      Lu and Liu made misrepresentations during the course of the grants.**

After obtaining the initial grant from DOE, Lu and Liu applied for and received two subsequent grants totaling $2 million. Lu and Liu made misrepresentations to obtain these grants. Lu electronically signed each subsequent proposal. Ex. 11, at 5; Ex. 12, at 5. In each subsequent grant proposal, Lu and Liu represented that MicroChem Solutions would complete at least 40% of the work. Ex. 11, at 7; Ex. 12, at 7. In the Phase II application, Liu and Lu represented that MicroChem Solutions "has received investments of close to US$1 million," Ex. 11, at 31, "has six part-time employees," Ex. 11, at 34, and has a "lab of [] ~200 sf" with "three lab tables" and various equipment and utilities. Ex. 11, at 70. In the Phase IIB application, Liu and Lu represented that MicroChem Solutions "has received investments of close to US$2 million," Ex. 12, at 45, "has six part-time employees," Ex. 12, at 47, and has a "lab of [] ~200 sf" with "three lab tables" and various equipment and utilities. Ex. 12, at 82. Each application contained budget proposals and representations about how the money would be spent that were inaccurate.

Throughout the course of the grant periods, Lu and Liu submitted disbursements requests totaling $2.1 million. To document their spending, Lu and Liu submitted quarterly and final SF425 financial report forms. These forms falsely reported that Lu and Liu spent grant funds on incurred, allowable expenses, when in fact they did not. A Special Agent at the Department of Energy Office of Inspector General analyzed bank records and traced expenditure of funds to numerous personal expenses. Ex. 18 at ¶¶ 53-56. For example, Lu and Liu spent grant funds on a Toyota 4Runner, which Lu used as her personal vehicle.

Ex. 9, at 47 (discussing the purchase of the 4Runner). Lu and Liu's use of grant funds and reports regarding such use were rife with fraud.

### C.     Lu and Liu made misrepresentations during the grant close-out process.

Under 10 C.F.R. § 600.316, entities receiving over $500,000 in a year under DOE Federal awards must obtain an audit from an independent auditor. Lu and Liu were required to obtain audits for their Phase II and IIB grant spending. They failed to do so. As a result, DOE referred the matter to its Internal Review and Advisory Services to close-out the grants. DOE employees subsequently requested schedules, certifications, and back-up documentation regarding Lu and Liu's spending. Via emails sent across state lines, Lu and Liu provided DOE with various "close-out documents," including invoices and canceled checks. Investigators determined that many of the documents were altered or fabricated.

For example, Lu and Liu submitted purported invoices from OU representing subcontract costs MicroChem Solutions allegedly paid OU. Ex. 13. These invoices conflicted with those obtained from OU. Ex. 14. Lu and Liu submitted invoices, which did not match up with other evidence. Ex. 15. Notably, Lu and Liu submitted invoices from an entity called Autograph Design, Ex. 15 at 55-56, which Lu and Liu fabricated, and submitted a canceled check (number 172) purportedly to Autograph Design for $53,980.45. *Id*. at 57. The canceled check included a forged signature of "L.P.," who Lu and Liu knew to be a real person. *Id*. The real check number 172, drawn on the MicroChem Solutions bank account was made out to Chase Card Services for $420. Ex. 16.

The pattern of false statements establishes by more than a preponderance of the evidence that Lu and Liu intentionally made misrepresentations to obtain and misspend the grant funds. The Court should find by a preponderance of the evidence that Lu, not only used a false document as she admits, but that she did so as part of the wire fraud and wire fraud conspiracy alleged in the indictment.

## III.    Loss amount for sentencing purposes is $2.1 million.

The applicable guideline, U.S.S.G. § 2.B1.1 directs the Court to determine loss amount for purposes of calculating the offense level. The Court "need only make a reasonable estimate of the loss." U.S.S.G. § 2B1.1 cmt. n. 3(C). The applicable guideline comment states: "In a case involving government benefits (*e.g.*, grants, loans, entitlement program payments), loss shall be considered to be not less than the value of the benefits obtained by unintended recipients or diverted to unintended uses, as the case may be." U.S.S.G. § 2B1.1 cmt. n. 3(F)(ii).

As discussed above, the entire amount of the grant is loss to the Department of Energy because Lu and Liu were unintended recipients. "[T]he primary purpose of the . . . STTR program[] is to fund eligible proposals of small businesses to bring products to market." *United States v. Aldissi*, 758 F. App'x 694, 712 (11th Cir. 2018). The STTR program also "required partnership between a small business and a research institution, frequently a university." *Id*. Where a grant applicant lies to get a grant and is in fact not eligible to receive that grant, the entire amount of the grant represents intended loss to the United States. *Id*. at 713 ("The benefit of the bargain for the government included the

12

ability to consider and award money to eligible deserving small businesses that could realistically bring a product to commercialization. That is precisely what the Scientists denied to the government, in the intended amount of $24,522,386."). DOE and Congress did not intend for grant funds to be used by sham small businesses, even if some actual work was performed with grant money. Thus, the entire $2.1 million is loss.

A.   **The Court should not offset the loss amount based on the value of any work performed with grant money**.

Lu and Liu are not entitled to an offset for any actual work performed with grant money. The Guidelines notes contain a section stating that loss should be reduced by the fair market value of property returned and the services rendered by the defendant prior to detection of a scheme. U.S.S.G. § 2B1.1 cmt. n. 3(E)(i). This note is not applicable in the case of STTR grant fraud because grant recipients do not render services to the granting agencies. *United States v. Jha*, 613 F. App'x 212, 215 (4th Cir. 2015) ("[T]he grant money was not paid to [the defendant] in exchange for his research reports, but rather to promote collaborative research between small businesses and research facilities."); *United States v. Qingyou Han*, 479 F. Supp. 3d 783, 787 (N.D. Ind. 2020) ("The grants were not made for the purpose of obtaining the fair market value of either services or research results – recall that the government received nothing in return for the grants."); *see United States ex rel. Longhi v. United States*, 575 F.3d 458, 473 (5th Cir. 2009) ("[W]here there is no tangible benefit to the government and the intangible benefit is impossible to calculate, it is appropriate to value damages in the amount the government actually paid to the

13

Defendants.").[3] "Simply put, the value given by the granting agency in the form of the grant cannot be offset by value 'received' when the agency didn't actually get anything in return." *Han*, 2020 WL 4746180, at *4.

Here, Lu and Liu received contracts to which they were not entitled and thereby caused losses to the DOE. Because funds are finite, other, honest and more deserving companies were denied funding. There is no simple way to measure the innovations lost by not funding these other, deserving, small businesses. Furthermore, the fraud hurt the integrity of the program, resulting in further harm when Congress evaluates the propriety of continuing funding. Performance of some work with grant money does not mitigate the DOE's losses. The DOE did not provide grant funds to get specific research or findings. The DOE provided the funds for the intangible benefit of supporting an eligible small business. DOE did not receive this intangible benefit because Lu and Liu did not comply

---

[3] In *Longhi*, the Fifth Circuit addressed false claims made in the context of an SBIR grant, a program related to the STTR program. *Id*. The Fifth Circuit emphasized that work was not done for the granting agency:

> These were not, for example, standard procurement contracts where the government ordered a specific product or good. The end product did not belong to the [granting entity]. Instead, the purpose of the SBIR grant program was to enable small businesses to reach Phase III where they could commercially market their products. The Government's benefit of the bargain was to award money to eligible deserving small businesses. The BMDO and the Air Force's intangible benefit of providing an "eligible deserving" business with the grants was lost as a result of the Defendants' fraud.

*Id*.

14

with the terms of the grants and misspent the money. The concept of applying an offset for fair market value of services rendered is not applicable here.

**B.    Alternatively, there is an insufficient basis to offset the loss amount.**

Despite the inapplicability of the offset concept, some courts have tried to apply it in similar circumstances. *United States v. Bin Wen*, No. 17-CR-06173, 2018 WL 6715828, at *11 (W.D.N.Y. Dec. 21, 2018) (citing *Near v. United States*, 708 F. App'x 590, 603-04 (11th Cir. 2017)).[4] These courts held that grant recipients were "intended recipient[s]" who diverted grant funds for "unintended uses." *Id.*; U.S.S.G. § 2B1.1 cmt. n. 3(F)(ii).  Because Lu and Liu were *un*intended recipients as set forth above, the Court should find that they do not qualify for an offset under the reasoning in *Near* and *Wen*.

If the Court disagrees, it should shift the burden of production to Lu and Liu to establish the value, if any, of the credit they should receive for any work performed. *Wen*, 2018 WL 6715828, at *14 ("To the extent Defendants claim a credit against the loss amount

---

[4] In *Near*, the Eleventh Circuit upheld a district court determination that the government suffered no loss in a grant fraud case because the grant recipient (and its subcontractors) performed the services listed in the grant application, in spite of the unintended use of grant funds. *Near v. United States*, 708 F. App'x 590, 603-04 (11th Cir. 2017). In *Near*, the district court heard "extensive testimony by a forensic accountant for the defendants" and found that the value of the defendant's labor "was worth more than any loss suffered by the government." *Id.* at 603.

The district court in *Han* explained that the *Near* analysis is misguided. *Han*, 479 F. Supp. 3d at 787. Regardless, the evidence in this case is distinguishable from the evidence that persuaded the *Near* Court to find no loss amount. The defendants in this case utterly failed to properly account for their spending of grant funds, and, unlike the apparent evidence introduced in *Near*, Lu suggests no proper basis to discount the amount of loss.

for work performed and services rendered, they are the parties who must produce evidence sufficient to allow the Court to ascertain the value of such credit."). The United States has the burden of proving the applicability of a sentencing enhancement by a preponderance of the evidence. But when the United States establishes, as here, that a defendant's claim to government benefits is rife with fraud, the Court should shift the burden of production to the defendant "who must offer evidence to show (if possible) what amounts represent legitimate claims." *United States v. Alphas*, 785 F.3d 775, 784 (1st Cir. 2015) (collecting cases); *United States v. Hebron*, 684 F.3d 554, 563 (5th Cir. 2012) ("[W]here the government has shown that the fraud was so extensive and pervasive that separating legitimate benefits from fraudulent ones is not reasonably practicable, the burden shifts to the defendant to make a showing that particular amounts are legitimate. Otherwise, the district court may reasonably treat the entire claim for benefits as intended loss.").

Lu provides no basis to find value in any services that were performed with grant money. Lu argues in her objections to the Presentence Investigation Report is that she did not intend to make false statements to obtain the grants therefore she did not intend to defraud the Department of Energy. ECF 136, at 30. She acknowledges she signed the applications but suggests that someone else, presumably Liu, completed the applications. *Id*. Under Lu's version of events, she made false statements with "reckless indifference" as whether they were true or false, which is all the law requires to show that her conduct was indeed intentional. *E.g.*, *United States v. Cochran*, 109 F.3d 660, 664 (10th Cir. 1997). Lu's assertions provide an insufficient basis to overcome the United States' evidence to

16

the contrary. Like the court's ultimate determination in *Wen*, Lu provides no basis for the Court to discount the loss amount alleged. *Wen*, 2018 WL 6715828, at *14 ("While Defendants claim that the Government obtained valuable intellectual property and other benefits as a result of their efforts, they have failed to adduce any evidence from which the Court could reasonably estimate the monetary value of those purported benefits.").

Where, as here, defendants made misrepresentations to obtain grant funds, failed to properly account for the funds, and misspent funds on personal expenses, the Court should find the full amount of grant funds constitutes loss for purposes of U.S.S.G. § 2B1.1.

## IV.    Lu owes restitution in the amount of $2.1 million.

In accordance with 18 U.S.C. § 3663A and the plea agreement, Lu owes restitution to all victims of her offense and relevant conduct. ECF No. 122, at ¶ 5. Regarding restitution, the Court should make a "reasonable determination of appropriate restitution rooted in a calculation of actual loss," and the Court "may resolve uncertainties with a view towards achieving fairness to the victim." *United States v. Wieck*, No. 19-6075, 2021 WL 4949177, at *8 (10th Cir. Oct. 25, 2021) (quoting *United States v. Howard*, 887 F.3d 1072, 1076 (10th Cir. 2018)) (emphasis omitted).  Here, Lu and Liu obtained grant funds intended for eligible small businesses. They ignored the accounting and documentation requirements and instead spent the grant money in their sole discretion in a manner that inured to their personal benefit. Under such circumstances the full amount of illegally-obtained grants should be repaid as restitution to the Department of Energy.  *Aldissi*, 758 Fed. App'x at 714.

17

## **CONCLUSION**

The Court should hold Lu accountable for all relevant conduct and sentence her to a within guidelines sentence. Additionally, the Court should order restitution in the amount of $2.1 million.

Respectfully submitted,

ROBERT J. TROESTER
Acting United States Attorney

*s/William E. Farrior*
WILLIAM E. FARRIOR
Okla. Bar No. 22137
MATT DILLON
Okla. Bar No.: 19321
Assistant United States Attorneys
210 Park Avenue, Suite 400
Oklahoma City, OK 73102
(405) 553-8700 (Office)
William.farrior@usdoj.gov
Matthew.dillon@usdoj.gov

## CERTIFICATE OF SERVICE

        I hereby certify that on December 13, 2021, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing all ECF registrants in the case.

s\WILLIAM E. FARRIOR
Assistant United States Attorney
